**COX, WOOTTON, LERNER GRIFFIN & HANSEN, LLP**
Lynn L. Krieger (SBN 209592)
Reilly C. Farrell (SBN 343742)
900 Front Street, Suite 350
San Francisco, CA 94111
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601
Email: lkrieger@cwlfirm.com
Email: rfarrell@cwlfirm.com

Attorneys for Plaintiff,
MSC Mediterranean Shipping Company (USA) Inc.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MSC Mediterranean Shipping Company (USA) Inc. as agent for MSC Mediterranean Shipping Company S.A., <br><br> Plaintiffs, <br><br> vs. <br><br> Panda Logistics USA, Inc.; Does 1 through 10, inclusive <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT** <br><br> Demand in excess of: $391,862.84 |

## JURISDICTION

1.  This is a suit for breach of contract and unpaid detention, and additional costs and fees pursuant to ocean Bills of Lading and other written agreements, and comprises an admiralty and maritime claim pursuant to 28 U.S.C. § 1333(1) and Rule 9(h) of the Federal Rules of Civil Procedure, and the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 et seq.

## VENUE

2. Venue is proper in this Court as the Defendant Panda Logistics USA, Inc. ("Defendant") is headquartered and has its principal place of business in Carson, California.

## THE PARTIES

3. Plaintiff MSC Mediterranean Shipping Company (USA) Inc. ("Plaintiff") is the agent on behalf of the international ocean carrier, MSC Mediterranean Shipping Company S.A.

4. Plaintiff is a New York corporation with its principal place of business in New York, New York. PLAINTIFF performs various services including billing and collection of detention, demurrage and other charges that are subject matter of this action.

5. Plaintiff is informed and believes, and on that basis alleges that Defendant is, and at all times relevant hereto was, a California corporation with its principal place of business in Carson, California. Defendant is registered as a non-vessel operating common carrier ("NVOCC") and an ocean freight forwarder with the Federal Maritime Commission, within the definitions provided in 46 USC 515,2 (k) and acted in such capacity with respect to the transportations that are the subject of this lawsuit.

6. Plaintiff has no knowledge of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, except that Plaintiff is informed and believes, and on that basis alleges, that the loss and damages sustained by Plaintiff was proximately caused by the Defendants' breach of contract. Plaintiff therefore sues these defendants by such fictitious names and will amend this Complaint to allege their true names and capacities when ascertained.

7. Plaintiff is informed and believes, and on that basis alleges that each of the Doe defendants was, at all times herein mentioned, the agent, principal, servant, employees or contractor for the other defendants.

**GENERAL ALLEGATIONS**

8. Plaintiff refers to paragraphs 1 through 7 of this Complaint and incorporates them herein as though fully set forth.

9. Between June 28, 2021 and September 30, 2021, Defendant entered into written contracts with Plaintiff for approximately 90 shipments of various goods[1] from China and Thailand, to the United States. True and correct copies of bills of lading evidencing these contracts of carriage are attached hereto as **Exhibit A**.

10. In addition to the attached transportation contracts, the shipments were subject to confidential service agreements filed with the Federal Maritime Commission.[2] Due to their confidential nature, those agreements are not attached to this complaint.

11. Defendants and parties on the Bills of Lading were notified of the arrival of containers however the containers were not moved from the railyard within the time allowed without charge, therefore incurring detention which Defendants have refused to pay, despite receiving invoices requesting payment.

12. The terms and conditions of Plaintiff's standard Seaway Bill pertaining to these cargoes are attached hereto as **Exhibit B** and state in relevant part as follows:

**Front of Bills of Lading:**

IN ACCEPTING THIS SEA WAYBILL, THE SHIPPER EXPRESSLY ACCEPTS AND AGREES TO, ON HIS OWN BEHALF AND ON BEHALF OF THE CONSIGNEE, THE OWNER OF THE GOODS AND THE MERCHANT, AND WARRANTS HE HAS AUTHORITY TO DO SO, ALL THE TERMS AND CONDITIONS WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS AND ON THE REVERSE SIDE AND THE TERMS AND THE CONDITIONS OF THE CARRIER'S

---

[1] Hardware parts, car parts, disposable incontinence pads, rubber products, furniture, crayons, etc.

[2] Service Agreement Numbers: 21-507TPC-DT, 21-481TPC-DT, 21-341TPC-2, 21-335TPC-DT, 21-331TPC-DT, 21-129TPC-DT.

APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE SHIPPER.

1. DEFINITIONS

> Freight: includes the freight and all charges, costs and expenses whatsoever payable to the Carrier in accordance with the applicable Tariff and this Sea Waybill, including storage, per diem and demurrage.

> \* \* \* \* \*

> Merchant: includes the Shipper, Consignee, holder of this Sea Waybill, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Sea Waybill or anyone acting on behalf of this Person.

14. DESCRIPTION OF GOODS AND MERCHANT'S RESPONSIBILITY

> 14.6 The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.

> 14.7 If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever, including but not limited to for a breach or infringement of a trademark, patent or other intellectual property right, the Carrier will not be liable for any loss or damage whatsoever incurred as a result of any opening, unpacking, inspection, re-packing, detention, destruction or delay. The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

> 14.8 The Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge.

Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff.

14.9 The Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odour free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon.

16. FREIGHT AND CHARGES

16.1 Freight has been calculated on the basis of the Shipper's particulars and if such particulars are found to be erroneous and additional Freight is payable, the Merchant shall be liable therefor and also for any expense thereby incurred.

16.2 All Freight is earned and due upon receipt of the Goods by the Carrier, whether the Freight is prepaid or collect and the Carrier shall be entitled to all Freight due under al l circumstances, ship and/or cargo lost or not lost or the voyage abandoned. All Freight shall be paid when due without any set-off, counter claim, or deduction.

16.3 Every Person defined as "Merchant" in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder. Any Person engaged by the Merchant to perform forwarding services with respect to the Goods shall be considered to be exclusively the Merchant's agent for all purposes, and any payment of Freight to such Person shall not be considered payment to the Carrier in any event whatsoever. Failure of such third parties to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of Freight.

20. NOTIFICATION AND DELIVERY

    20.3 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff or as otherwise agreed. If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in Containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, including for misdelivery or non-delivery, shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.

    20.4 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at its discretion and without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility attaching to it, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant under or in connection with this Sea Waybill.

## FIRST CAUSE OF ACTION

**(Breach of a Maritime Contract Against All Defendants)**

13.     Plaintiff refers to paragraphs 1 through 12 of this Complaint and incorporates them herein as though fully set forth.

14.     Plaintiff has fully performed its tariff and contractual obligations, except those that were discharged or excused by the conduct of the Defendant.

15.     Pursuant to the contracts of carriage the Defendant is defined as a "Merchant" under the relevant Bills of Lading and was required to retrieve containers and pay detention and other related charges incurred due to retention of the ocean containers beyond the specified free times, in addition to any attorneys' fees, expenses, and costs.

1      16.    Detention accrued as set forth in MSC Governing Rules tariff FMC 12 (MESU-012), Demurrage/Storage - Detention - Per Diem rule (106), and totals $391,862.84. as reflected in the attached **Exhibit C.**

    19.    Plaintiff has demanded that the Defendants pay the total sum of $391,862.84 pursuant to the Bill of Lading terms, but the Defendant has failed and refused and continues to fail and refuse to pay said sum, and the whole thereof is now due, owning and payable together with interest, fees and costs.

    20.    The Defendant materially and substantially breached the agreements by failing to pay he detention when demands were made.

    21.    As a direct and proximate result of the material breach of contracts by the Defendant, the Plaintiff has sustained damages in the sum of at least $391,862.84, no part of which has been paid by the Defendant despite demands therefore.

    22.    Pursuant to provisions in the applicable tariff, service agreement and Bills of Lading, including but not limited to clauses 14, 16, and 20 in the Bill of Lading terms, the Plaintiff is entitled to recover reasonable attorneys' fees and the cost of suit incurred in this case.

## SECOND CAUSE OF ACTION
### (Open Book Account Against All Defendants)

    23.    Plaintiffs incorporate by reference paragraphs 1 through 22.

    24.    Within the last four (4) years, prior to the commencement of this action, the Defendant became indebted to PLAINTIFF on an open book account for a principal balance due in the total amount of $391,862.84.

    25.    Despite due demands, the sum of $391,862.84 plus fees and costs is now due, owing and unpaid on the open book account.

/ / /

/ / /

/ / /

## THIRD CAUSE OF ACTION

### (Goods and Services Rendered Against All Defendants)

26. Plaintiff incorporates by reference paragraphs 1 through 25.

27. Plaintiff performed the services and delivered the goods as request by Defendant.

28. Defendant is liable under the Bills of Lading and failed to pay for use of Plaintiff's equipment and services.

29. The reasonable value of the services, including the use of the container equipment, totals in excess of $391,862.84.

30. Despite due demands, the sum of $391,862.84 is now due, owing and unpaid for said goods and services.

WHEREFORE, Plaintiff prays for judgment against defendants, jointly and severally, as follows:

1. For damages in the principal amount of $391,862.84;

2. For pre-judgment interest at the rate of 10 percent according to proof;

3. For reasonable attorneys' fees;

4. For costs of suit incurred herein.

DATED: February 2, 2023        COX WOOTTON LERNER GRIFFIN & HANSEN LLP

By: _____
Lynn L. Krieger
Attorneys for Plaintiff,
Plaintiff Mediterranean Shipping Company
(USA) Inc. as agent for MSC
Mediterranean Shipping Company S.A